Johnson, J.
The issue relating to the deed made by the testator to his son, Guy H. Knepper, for the lot in Montpelier was resolved in favor of its validity. All parties now agree that the question as to that deed has no application to this proceeding in error. The sole question involved is whether the *535 land devised to the two sons by Items Two and Three of the will is charged with the payment of the legacies made in the subsequent items.
There was considerable testimony introduced at the trial concerning the condition and extent of the estate of the testator at the time of the making of the will.
Plaintiffs in error contend that the court erred in admitting the testimony of the attorney who drew the will, and who testified to statements made by the testator to him at that time, touching the subject of his estate, and concerning his children and grandchildren. The- objection and exception by the plaintiffs in error is founded upon the provisions of Section 11494, General Code. The pertinent part of that section reads:
“The following persons shall not testify in certain respects:
“An attorney, concerning a communication made to him by his client in that relation, or his advice to his client; * * * the attorney * * * may testify by express consent of the client * * * and if the client * * * voluntarily testifies, the attorney * * * may be compelled to testify on the same subject.”
In the very recent case of Swetland v. Miles, 101 Ohio St., 501, it was held .that the section referred to clearly and conclusively disqualifies an attorney from testifying concerning a communication made to him by his client in that relation or his advice to his client, and that the death of the client did not change or abrogate the application of the rule.
*536 In that case it did not appear that the attorney was a witness to the will itself. When the attorney is a witness to the will itself, a different question is presented. When a testator procures his attorney as a subscribing witness to his will he by that act expressly consents that the attorney may testify.as fully as any other subscribing witness as to the capacity of the testator or any other fact affecting the validity of the will. The only object that the testator has in requesting any person to witness his will is to assure the legal execution of the will and to preserve the evidence thereof. By making such request, the testator thereby waives the exemption contained in Section. 11494, General Code. But there is no such presumption as to the waiver of the incompetence of the attorney to testify to facts which vary the terms of a written instrument prepared by him as such attorney, and in a proceeding to construe a will the attorney who wrote the will and with whom the testator consulted concerning it is not competent to testify concerning a communication made to him by his client touching his estate, the objects of his bounty or the meaning or effect of provisions contained in the will.
Now, as to the will itself. It is conceded that the testator owned a farm of 160 acres in Williams county at the time of his death; that he had no other real estate and that the- personal estate was less than sufficient to pay the specific legacies. After a careful reading of the record we have not been able to find from the competent evidence in the case that the testator when he made the will had, or supposed he had, sufficient property in addi *537 tion to the farm to pay the legacies. By the second item of the will he gave to his son Albert the east half of the 160 acres, and by the Ihird item he gave to his son Guy the west half thereof, and provided that Guy was to pay to his brother Albert $400 “to balance the value of the said above described two tracts of land.” Then follows the Fourth Item: “I give, devise and bequeath to my said sons, Albert F. Knepper and Guy H. Knepper all of the residue of my property real, personal and mixed, except one Bureau made of walnut lumber and finely finished, which is hereinafter bequeathed to my daughter, Ida A. Brannan.”
Then by the Fifth, Sixth, Seventh and Eighth Items he gives to his daughter Ida $2600, to his granddaughter Clela R. Scott, $900, to his grandson Blann Scott, $900, to his granddaughter Demma Scott, $900, and provides that the $2600 to the daughter shall be “paid by my executors within one year after my decease,” and in the several bequests to the grandchildren he provides that the sum shall be paid by said executors on the date of the grandchild becoming of legal age in each instance.
Did the two sons, Albert and Guy, take the property devised and bequeathed to them charged with the payment of the legacies to the daughter and grandchildren ?
It is of course conceded that the cardinal rule of testamentary construction is to ascertain and give effect to the intention of the testator unless he has attempted to make a disposition contrary to law or *538 public policy. And where there are doubtful clauses in the will, the court in determining the meaning that the testator intended it to have will not be controlled entirely by general rules or by judicial decisions in cases apparently similar, but will interpret them reasonably in the particular case. Moon, Admr., v. Stewart, 87 Ohio St., 349.
This is a salutary rule, because it is seldom that two wills present precisely the same question, and all rules and presumptions must yield to the paramount intention of the testator where that may be ascertained from the language used by him. And the question whether legacies are to be charged on real estate depends on the terms and provisions of the particular will under consideration. All authorities agree (40 Cyc., 2014) that “The intention to charge legacies on real estate must clearly appear or be clearly deducible from the language and dispositions of the will. It is not necessary that the charge shall be made in express terms or that any particular language shall be used. * * * But the court will not construe a will as charging legacies upon real property, and particularly upon real property specifically devised, unless such an intention clearly and satisfactorily appears.”
In the consideration of a question such as is presented here, courts and counsel uniformly begin with the full concession that the intention of the testator must control and that that intention must be gathered from the language of the will itself where that is possible. When different views are entertained concerning the language it naturally *539 follows that there is a search for authorities under which a particular construction may be sustained. The danger is that this may lead to reliance on abstract technical rules in forgetfulness of the wish of the testator and in disregard of the safe and sensible starting, point at which the inquiry began.
Where the intention is not clear, it is proper to consider the condition and extent of the estate, and whether the testator had, or supposed he had, sufficient undisposed of personal or real property to pay all legacies, and, if so, the presumption is that he intended that the legacies should be paid from that property^ As already stated we have not been able to find that the testator when he made the will had sufficient property in addition to the farm to pay the legacies. But in this case, there was no undisposed of estate, real or personal. When the testator came to write the items in which the legacies were given he had already expressly disposed of all his real estate and all of his personal property. By Items Two and Three he had given his sons, Albert and Guy, the farm of 160 acres, and by Item Four he had given to the same two sons, not as executors, but individually and absolutely “all the residue of my property real, personal and mixed,” except the bureau referred to. After having disposed of all his property, as above stated, he proceeded to make the bequests in Items Fifth, Sixth, Seventh and Eighth, in each instance directing that it be paid by the executors. When he made that direction he of course fully realized that after the carrying out of the prior items there would be *540 nothing in the estate and the executors, as executors, would have nothing to apply on the legacies. The only rational conclusion from that situation is that the testator intended to give to the two sons all of his estate absolutely and that they should take the whole estate charged with the payment of the specific legacies to the daughter and the grandchildren.
It will be noted that the legacy to the daughter was to be paid within one year after his decease, and that the legacies to the grandchildren were to be paid to each of them as they severally became “of legal age.” There is no provision that the bequest to the grandchildren should be held in trust for them during the period prior to the time of their becoming of legal age. The provisions are that the amounts shall be paid by the executors to the beneficiaries when they become of age.
The father regarded the west half of the farm as more valuable than the east half, and, therefore, made the provision that the son receiving the west half should pay his brother $400 “to balance' the values.” All the rest of the estate they took equally.
We think it clearly appears from this will that the father after full deliberation concluded to turn over his entire estate to his two sons and to require them to pay their sister $2600, and to the three children of their deceased sister substantially the same amount. This was the plan he had decided upon. This was clearly his purpose and intention. The sons took the estate charged with the accomplishment of that object.
*541 The judgment will be reversed and the cause remanded to the court 'of appeals with instructions to enter a decree in accordance with this view.

Judgment reversed.

Marshall, C. J., Hough, Wanamaker, Robinson, Jones and Matthias, JJ., concur.